16-3246
United States v. Harris

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of July, two thousand eighteen.

PRESENT: DENNIS JACOBS,
REENA RAGGI,
PETER W. HALL,
    <u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,
    <u>Appellee</u>,

    **-v.-**                                                          **16-3246**

WILLIE HARRIS,
    <u>Defendant-Appellant</u>.
- - - - - - - - - - - - - - - - - - - - -X

1

**FOR DEFENDANT-APPELLANT:**    BRYAN S. OATHOUT, Law Office of Bryan S. Oathout; Rochester, New York.

**FOR APPELLEE:**    MARY C. BAUMGARTEN, Assistant United States Attorney, <u>for</u> James P. Kennedy, Jr., United States Attorney for the Western District of New York; Buffalo, New York.

Appeal from a judgment of the United States District Court for the Western District of New York (Wolford, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED**.

Willie Harris appeals from a judgment entered September 16, 2016 in the United States District Court for the Western District of New York (Wolford, <u>J.</u>) convicting him after a jury trial on one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c); one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); and one count of possession of an unregistered short-barreled shotgun, in violation of 26 U.S.C. §§ 5841, 5845(a), 5861(d), and 5871.  He was sentenced principally to 115 months' imprisonment, to be followed by six years of supervised release.  We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

**1**. Harris argues that the district court erred in failing to suppress evidence seized from his apartment pursuant to a search warrant.

A June 2014 warrant was issued to search Harris' apartment at 49 Troup Street (Apartment 21) in Rochester, New York for evidence related to a human-trafficking investigation.  The search warrant was based on an affidavit prepared by FBI Special Agent Barry Couch.  The officers found no evidence of human trafficking, but during the search law enforcement officers found (among other things) a short-barreled shotgun, ammunition, cocaine, money, a digital scale,

and small plastic baggies.  Harris was charged on the basis of the evidence seized during the arrest.

Harris's suppression motion argued that "the search warrant affidavit contained incomplete and inaccurate information."  App'x 231 (internal quotation marks omitted).  In particular, Harris submitted the affidavit of Sam DiMaggio, the building superintendent, who averred that he did not make the statements attributed to him in the search warrant affidavit.  On the basis of this evidence, Magistrate Judge Feldman conducted a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).  Judge Feldman issued a Report and Recommendation recommending that the motion to suppress be denied, and the district court adopted it in its entirety.

"On appeal from a district court's ruling on a motion to suppress evidence, we review legal conclusions de novo and findings of fact for clear error."  United States v. Bershchansky, 788 F.3d 102, 108 (2d Cir. 2015) (internal quotation marks omitted).[1]  Reversal for clear error is appropriate if after reviewing the record we are "left with the definite and firm conviction that a mistake has been committed."  Id. at 110.  "We pay special deference to the district court's factual determinations going to witness credibility."  Id. at 108 (internal quotation marks omitted).

"[A] district court may not admit evidence seized pursuant to a warrant if the warrant was based on materially false and misleading information. . . . [M]aterially misleading omissions as well as misrepresentations may be challenged by the defense."  United States v. Levasseur, 816 F.2d 37, 43 (2d Cir. 1987) (citing Franks v. Delaware, 438 U.S. 154 (1978)).  "[T]o suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's

---

[1] We have yet to decide whether, in reviewing a district court's decision on a motion to suppress evidence, we should view the evidence in a light most favorable to the prevailing party or simply review for clear error.  Id. at 110.  Because we conclude that Harris' argument fails under either test, we need not (and do not) decide the question here.

probable cause or necessity finding." United States v. Rajaratnam, 719 F.3d 139, 146 (2d Cir. 2013) (internal quotation marks and alterations omitted).

Harris identifies several inconsistencies between the search warrant affidavit and testimony elicited during the Franks hearing, and offers them as proof that the affidavit included materially false and misleading information. First, Agent Couch omitted from the search warrant application that two witnesses failed initially to identify the photograph of Harris when they were shown a photo array. One was CW1, a 16-year old woman who told law enforcement officers that an individual named "Shawn" (later identified as Harris) was pimping her from his apartment at 49 Troup Street; the other was DiMaggio (referred to as CW3 in the warrant affidavit). However, Agent Couch's testimony establishes that, after CW1 was urged to consider the importance of answering truthfully, she immediately pointed to the photograph of Harris in the photo array. Agent Couch also explained that he did not include the identification procedures used with DiMaggio because it was not needed to establish probable cause.

Second, Harris points to DiMaggio's testimony contradicting statements attributed to him in the search warrant affidavit. DiMaggio testified that (contrary to the warrant affidavit) Harris never propositioned him with a young woman for prostitution purposes and that he never saw a lot of men coming out of Apartment 21. However, the magistrate court assessed DiMaggio's credibility and concluded that his "testimony was hardly a model of clarity or consistency" and that it was "all over the place," App'x 241; and the district court found that "DiMaggio repeatedly contradicted himself," Id. at 315. DiMaggio's testimony is further undermined by the testimony of Geeta Vijay, the property manager for 49 Troup Street: Vijay testified that she was present when DiMaggio gave his initial statement to law enforcement, that DiMaggio had said that Harris was "pimping" a young woman, and that DiMaggio explained that Harris had offered the woman to him for sex. Id. at 137.

Finally, Harris contends that Vijay denied in her testimony that she identified Harris in a photo array, and argues that Vijay's testimony thus contradicted statements attributed to her in the warrant affidavit. But Vijay in fact testified that she did not *remember* being shown the photograph, which is not

4

inconsistent with Agent Couch's testimony that, at that time, Vijay identified Harris in a photo array. See Id. at 138, 147-48.

Accordingly, the district court did not clearly err in finding that Agent Couch's testimony was "credible and fully consistent with the information he utilized in his supporting affidavit." Id. at 242; see also id. at 317. Harris has failed to identify any evidence that the district court was misled by any intentional or reckless statements or omissions in Agent Couch's affidavit.

As to materiality, "the ultimate inquiry is whether, after putting aside erroneous information and correcting material omissions, there remains a residue of independent and lawful information sufficient to support a finding of probable cause or necessity." Rajaratnam, 719 F.3d at 146 (internal quotation marks and alterations omitted). Even disregarding DiMaggio's statements in the search warrant affidavit, the affidavit was sufficient to support a finding of probable cause: CW1 provided a detailed description of her prostitution activities at 49 Troup Street (Apartment 21) and her relationship with "Shawn"; and Agent Couch described the steps he undertook to identify Harris as the individual living in that apartment and to match CW1's description of Shawn with Harris' physical characteristics. See App'x 55-57. Accordingly, Harris has failed to show that any of the purportedly inaccurate or incomplete information was material to the finding of probable cause.

**2.** Harris argues that the district court committed procedural error by applying a two-level enhancement for obstruction of justice pursuant to United States Sentencing Guidelines § 3C1.1.

"On review of a district court's decision to enhance a defendant's sentence for obstruction of justice, we accept the court's findings of facts unless they are clearly erroneous . . . [and] [w]e review de novo a ruling that the established facts constitute obstruction of justice, giving due deference to the district court's application of the guidelines to the facts." United States v. Agudelo, 414 F.3d 345, 348 (2d Cir. 2005) (citations and internal quotation marks omitted).

A district court may apply a two-level enhancement for obstruction of justice if

5

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense[.]

U.S.S.G. § 3C1.1. Conduct covered under this section of the Sentencing Guidelines includes perjury. United States v. Dunnigan, 507 U.S. 87, 93-94 (1993). "[B]efore applying an obstruction enhancement based on perjury, the sentencing court must find by a preponderance of the evidence that the defendant 1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter." United States v. Thompson, 808 F.3d 190, 194-95 (2d Cir. 2015) (internal quotation marks omitted). A perjury enhancement is appropriate if the defendant "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." Dunnigan, 507 U.S. at 94. "Although separate and clear findings on each element of perjury are preferred, a general finding of obstruction that tracks those factual predicates necessary to support a finding of perjury will suffice." United States v. Shonubi, 998 F.2d 84, 88 (2d Cir. 1993).

At sentencing, the district court made detailed findings supporting its conclusion that at trial Harris intentionally testified falsely as to several material issues: he denied telling law enforcement agents that a "sawed-off little thing" was in his residence; he denied admitting to agents that there was crack cocaine in his apartment, which he sold for money; he claimed that he used the baggies in his apartment to discard marijuana seeds, rather than packaging drugs for sale; he denied responsibility for allowing his nephew to store the shotgun in his apartment; and he denied using the scale found in his apartment for drug distribution. App'x 1052-53.

Most significantly, the district court determined that Harris committed "clear cut perjury" when he testified that it was not his voice on a recorded telephone call to his sister from the Monroe County jail. Id. at 1054. During the

call, which was attributed to Harris through the inmate telephone system, Harris stated that he was selling drugs and that he had been holding onto a shotgun for his nephew, "Lil D." Id. Harris testified that someone in jail was impersonating him.

The district court concluded that Harris' testimony was false by comparing it to the testimony of law enforcement agents. The district court found that the agents were credible, that Harris was not, and that the objective evidence (e.g., the gun, drugs, money, and digital scale found in Harris' apartment) corroborated the agents' version of events. The district court also rejected Harris' contention that his testimony was the result of confusion, mistake, or faulty memory: even if Harris misunderstood the government's questions on cross-examination, as he contends on appeal, that does not account for Harris' testimony that it was not his voice on the recorded telephone call admitting that he possessed the gun and sold drugs. We find no error in the district court's conclusion that Harris intentionally gave false testimony on a material matter and that a two-level enhancement for obstruction of justice was warranted.

We have considered Harris' remaining arguments and conclude that they are without any merit. The judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

7